**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 20-cr-00164-CMA-JMC

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     BENJAMIN DAVID HARBIN,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Alecia L. Riewerts, Assistant United States Attorney for the District of Colorado, and the defendant, Benjamin David Harbin, personally and by counsel, Douglas I. Richards, Richards Carrington, LLC, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I. PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties understand that any recommendations that a particular sentence or sentencing range be imposed pursuant to this Plea Agreement are not binding on the Court. Because the government is agreeing to dismiss the Indictment at the time of sentencing, the defendant will be permitted to withdraw his plea of guilty if this Court

1

COURT EXHIBIT 1

rejects this plea agreement pursuant to Rule 11(c)(1)(A) and (c)(5) of the Federal Rules of Criminal Procedure.

A. **Defendant's Obligations**

   1**. Count of Conviction**

The defendant agrees to plead guilty to Count One of the Information charging a violation of 18 U.S.C. § 2422(b), Coercion and Enticement.

   2. **Waiver of Appeal**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

> (1) the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 2422(b);
>
> (2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 43; or
>
> (3) the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings.  In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

3

B. **Government's Obligations**

    1. **Dismissal of Charges and Additional Charges**

If the defendant enters an unconditional plea of guilty to Count One of the Information and otherwise fulfills all obligations outlined above, the government will dismiss the Indictment at the time of sentencing and agrees not to charge the defendant with any other violations of law now known to the United States Attorney's Office for the District of Colorado.

    2. **Acceptance of Responsibility**

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the crime of Coercion and Enticement, 18 U.S.C. § 2422(b), are as follows:

*One:* The defendant knowingly persuaded, induced, enticed, or coerced;

*Two:* An individual who is younger than 18;

*Three:* To engage in any sexual activity for which any person can be charged with a criminal offense; and

*Four:* The defendant used a facility or means of interstate or foreign commerce

4

to commit the crime.[1]

The production of child pornography as defined in 18 U.S.C. § 2256(8) is a "sexual activity for which a person can be charged with a criminal offense".[2] "Child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.[3]

The parties agree that the elements of the crime of Production of Child Pornography, 18 U.S.C. § 2251(a), are as follows:

*One*:  The defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct;

*Two:*  That the defendant acted with the purpose of producing a visual depiction of such conduct; and

*Three*:  That the defendant knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or that the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by

---

[1]  Fifth Circuit Criminal Pattern Jury Instruction 2.91 [modified].  The Tenth Circuit does not have a pattern instruction for this crime.
[2] 18 U.S.C. § 2427.
[3] 18 U.S.C. § 2256(8)(A).

computer; or that the visual depiction was actually transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.[4]

"Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.[5]

"Sexually explicit conduct" means actual or simulated:

1.      sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; or

2.      bestiality; or

3.      masturbation; or

4.      sadistic or masochistic abuse; or

5.      lascivious exhibition of the anus, genitals, or pubic area of any person.[6]

### III. <u>STATUTORY PENALTIES</u>

Based on the defendant's criminal history known at this time, the applicable maximum statutory penalty for a violation of 18 U.S.C. § 2422(b), Coercion and Enticement, is not less than 10 years imprisonment and not more than life imprisonment, not more than a $250,000 fine, or both.  Pursuant to 18 U.S.C. § 3583(k),

---

[4] 18 U.S.C. § 2251(a); Fifth Circuit Criminal Pattern Jury Instruction 2.84 [modified]. The Tenth Circuit does not have a pattern instruction for this crime.
[5] 18 U.S.C. § 2256(5).
[6] 18 U.S.C. § 2256(2)(A).

the term of supervised release is not less than 5 years and up to a term of life. The defendant will be required to pay a $100 special assessment.  The defendant will be required to pay a $5,000 special assessment unless the Court finds that the defendant is indigent.  18 U.S.C. § 3014.  This special assessment currently expires on December 16, 2022.  If the defendant is sentenced by that date or the special assessment is renewed by Congress it will still apply; if the defendant is sentenced after December 16, 2022, and the special assessment is not renewed by Congress, the special assessment will not apply.  The defendant will be required to pay a special assessment of no more than $50,000 for a child pornography production offense as defined under 18 U.S.C. § 2259(c)(1), which includes any offense under chapter 117 that involved the production of child pornography (as such term is defined in 18 U.S.C. § 2256).  18 U.S.C. § 2259A(a)(3).

The parties do not believe that the sentencing enhancement under 18 U.S.C. § 3559(e) applies to the defendant.  However, if the Court takes the position that 18 U.S.C. § 3559(e) applies, the defendant will be allowed to withdraw his guilty plea.

## IV. <u>COLLATERAL CONSEQUENCES</u>

The conviction may cause the loss of civil rights, including but not limited to the right to possess firearms, vote, hold elected office, and to serve on a jury.

### A. <u>Future Violations of Supervised Release</u>

If supervised release is imposed, a violation of any conditions of probation or supervised release may result in a separate prison sentence and additional supervision. If a condition of release is violated, the defendant may be sentenced to up to 5 years

without credit for pre-release imprisonment or time previously served on post-release
supervision.

B. **Registration under the Sex Offender Registration and Notification Act**

The defendant has been advised and he understands that under the Sex
Offender Registration and Notification Act, a federal law, and pursuant to 18 U.S.C.
§ 3583(d), upon his release from prison and as a condition of his supervised release, if
any, he will be subject to federal and state sex offender registration requirements, and
that those requirements may apply throughout his life.  The defendant understands he
must register as a sex offender and must keep the registration current with the state sex
offender registration agency in each of the following jurisdictions: where he was
convicted, where he resides, where he is employed, and where he is a student.  The
defendant understands that the requirements for registration include providing his
name, residence address, the names and addresses of any places where he is or will
be an employee or a student, and information relating to intended travel outside the
United States, among other information.  The defendant further understands that the
requirement to keep the registration current includes informing at least one jurisdiction
in which he resides, is an employee, or is a student not later than three business days
after any change of name, residence, employment, or student status.  The defendant
shall comply with requirements to periodically verify in person his sex offender
registration information.  The defendant has been advised, and understands, that failure
to comply with these obligations subjects him to prosecution for violations of applicable
state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or

imprisonment, or both.  Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction.

C. **Restitution**

Defendant acknowledges that pursuant to 18 U.S.C. § 2429, the Court is required to order restitution for the full amount of the victim's losses as defined at 18 U.S.C. § 2259 as determined by the court or stipulated to by the parties.  Defendant will be required to pay restitution for the full amount of the victims' losses to the victims of the offense to which defendant is pleading guilty.  For purposes of this paragraph, the term "victim" is defined as the individual harmed as a result of a crime under chapter 117, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or a representative of the victim's estate, or another family member, or any other person appointed as suitable by the court.  Defendant further understands the amount of loss sustained by the victim will be determined during the course of preparation of the presentence investigation report.

Defendant acknowledges that the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to, receive compensation for their injuries from the proceeds of insurance or any other source.  Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims.  Defendant understands full restitution will be ordered regardless of defendant's financial resources.  Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw

defendant's guilty plea.  Defendant further agrees to comply with any restitution order entered at the time of sentencing.  Defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate.  Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.  Defendant agrees any restitution imposed will be non-dischargeable in any bankruptcy proceeding and defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

## V.  STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts that may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial:

The defendant came to law enforcement attention after he utilized Instagram accounts to communicate with minor females online, several of whom were between seven and nine years of age. During the course of the communications, the defendant persuaded some of these minors to send him sexually explicit images of themselves. As further described herein, the defendant was the subject of law enforcement investigations in the United States, Canada, and England.

### ***Minor #1***

The FBI investigation began on January 2, 2020, when the Cheektowaga Police Department, of Cheektowaga, New York, requested the assistance of the FBI Buffalo Division in a matter involving an 8-year-old girl, hereinafter "Minor #1". The exploitation was facilitated through the social networking platform Instagram by an individual utilizing the username "cuteboy4110".

On January 28, 2020, Minor #1 was interviewed at the Child Advocacy Center in Buffalo, New York. Minor #1 explained she installed the Instagram application on her mobile phone and thereafter was "followed" by two individuals. One of those individuals used the Instagram account username "cuteboy4110" and was eventually identified as the defendant. This individual contacted Minor #1 through Instagram and identified himself as "David". Minor #1 further disclosed during the recorded interview that "cuteboy4110" had requested naked pictures of her vagina and she did in fact take pictures of her vagina and send those pictures to "cuteboy4110" as requested from her Instagram account to "cuteboy4110"'s Instagram account. Minor #1 further stated that the user of the "cuteboy4110" account sent her a picture of his penis.

The forensic examination of Minor #1's cell phone revealed that the communications between "cuteboy4110" and Minor #1 occurred between November 27, 2019, and December 3, 2019. The communications were also recovered from the search warrant return material for the "cuteboy4110" Instagram account further described below. The defendant used a picture of a puppy as his profile picture. From the conversation string, it is clear that photos were exchanged back and forth between Minor #1 and the defendant. This is evidenced by a photo icon that appears on the screen between two text entries. Because photos shared on Instagram through the direct messaging feature are only viewable by the parties one or two times before they become inaccessible and Instagram does not capture or retain photos shared in this manner, the photos exchanged were not able to be recovered from Minor #1's phone or from the Instagram search warrant return material.

A review of the conversation reflects that age is discussed at the beginning of the communication between the defendant and Minor #1. The defendant states that his name is "David" and that he is 24. Minor #1 states that she is the same age, to which the defendant replies, "I only like talking to younger girls." Minor #1 then states that she is 12 and later discloses to the defendant that she is 8 after he tells her he doesn't like talking to girls older than 11. Minor #1 was 8 years old at the time of the communications.

During the course of the communications, the defendant requests Minor #1 to take a photo of her face, which she appears to do. The defendant appears to reciprocate by sending a photo of himself as the communications indicate a photo was

sent through the Instagram direct messaging tool by inserting a "Photo" icon into the text thread.  The defendant asks if they can be best friends and if she likes him. He asks if they can be secret boyfriend and girlfriend. The defendant then began to make specific requests for sexually explicit content.  The defendant asks for photos of the inside of her undies, asks her to open her legs so that he can see all of it, and of her "private" and "sexy private".

On November 27, 2019, the following conversation ensued:

| DEF | "Can I ask you something really personal" |
|---|---|
| MIN #1 | "Sure" |
| DEF | "Are you wearing any cute undies" |
| MIN #1 | "There white" |
| DEF | "Cute wish I could see" |
| MIN #1 | "Same" |
| DEF | "Can you try and show" |
| MIN #1 | "No sis will see" |
| DEF | "Please" |
| MIN #1 | "Fine" |
| DEF | "I love you" |
| MIN #1 | "I love you to" |
| DEF | "You more" |
| MIN #1 | (Heart face emoji)(Heart face emoji) |
| MIN #1 | (Insertion of a "Photo" icon, indicating a photo was sent by MIN #1) |
| MIN #1 | "Sorry it was blurry" |
| DEF | "They are so cute I love the Sunday" |
| MIN #1 | (several heart, kissing, and laughing emojis inserted) |
| DEF | "Would you snuggle with me" |
| MIN #1 | "Should I" |
| DEF | "It's up to you" |
| MIN #1 | (maybe face emoji) |
| MIN #1 | "Of course" |
| MIN #1 | "Got you" |
| DEF | Would you wear shirt and undies or just undies" (shocked face emoji) |
| MIN #1 | (Heart) "Shirt and undies" |
| DEF | "Yea" |

The conversation continues by the defendant suggesting and asking if they would ever get dressed together and if Minor #1 needed help taking a bath. Minor #1 asks if the defendant wants to make out.  The communication ensues as follows:

| DEF | "Can I see more of your cute undies bae" |
|-----|------------------------------------------|
| DEF | "Is that ok bae" |
| MIN #1 | "Hey bae" |
| MIN #1 | (Insertion of a "Photo" icon, indicating a photo was sent by MIN #1) |
| DEF | "Where you live" |
| DEF | "So cute" |
| DEF | "Arkansas what about you" |
| MIN #1 | "Buffalo" |
| DEF | "I love the pink on the top" |
| MIN #1 | "Thanx bae if I was with you I would kiss the heck out of you" |
| DEF | "This is our secret right" |
| DEF | "Same" |
| MIN #1 | "Yeah" |
| DEF | "Can I ask you something bae" |
| MIN #1 | (Heart face emoji) |
| DEF | (Kissing face emoji, boy and girl kissing emoji, boy and girl heart emoji) |
| MIN #1 | "Of course" |
| DEF | "Can I see the inside of your undies" |
| DEF | "Is that ok" |
| MIN #1 | "Ok it's a little hairy pls don't make fun" |
| MIN #1 | (Worried face emoji) |
| DEF | "Ok promise" |
| DEF | "Your my bae" |
| MIN #1 | "Ok" |
| DEF | "I love you" |
| MIN #1 | (Insertion of a "Photo" icon, indicating a photo was sent by MIN #1) |
| DEF | "Cute" |
| DEF | "I love it" |
| MIN #1 | "Can you show me yours" |
| DEF | "Yea can you open legs so I can see all of it" |
| DEF | "Then I'll show ok baby girl" |
| MIN #1 | "Ok love you" |
| DEF | "Love you more" |
| MIN #1 | "We're stopping so right after" |
| DEF | "Ok" |

14

There is a break in the conversation where the defendant does not respond and Minor #1 is sending several texts and worried that the defendant is mad or breaking up with her. He eventually reengages in the conversation stating he had to run a few errands.  The communications continue as follows:

| | |
|---|---|
| DEF | "Can I see the picture now" |
| MIN #1 | "Can I see you" |
| MIN #1 | (Three worried face emojis) |
| DEF | "Yea" |
| MIN #1 | "Please" |
| MIN #1 | "Really" |
| MIN #1 | (Four heart face emojis) |
| MIN #1 | "I love you bae I knew you were always sexy" |
| DEF | "Yea can I see your private" |
| DEF | "Same" |
| MIN #1 | (Thumbs up icon) |
| DEF | "Love you" |
| MIN #1 | "You are so sexy" |
| DEF | "Same" |
| MIN #1 | "So you ready" |
| DEF | "Yea bae" |
| MIN #1 | "Ok" |
| MIN #1 | "My mom almost" |
| MIN #1 | "Ok let's do this" |
| DEF | "Ok bae" |
| MIN #1 | (Insertion of a "Photo" icon, indicating a photo was sent by MIN #1) a heart and profile of DEF appeared below the photo indicating that DEF "liked" the photo |
| MIN #1 | "Show me yours" |
| DEF | "Ready bae" |
| MIN #1 | "Yeah" |
| DEF | (Insertion of a "Photo" icon, indicating a photo was sent by DEF) a heart and profile of MIN #1 appeared below the photo indicating that MIN #1 "liked" the photo |
| DEF | (surprised face emoji) |
| MIN #1 | "Sexy" |
| DEF | "Thanks can I see more" |
| MIN #1 | "Since I am sitting that's the deepest I can go) |
| DEF | "It's ok" |
| DEF | "Can I see more of that" |

| | |
|---|---|
| MIN #1 | "Another one" (two heart face emojis) |
| MIN #1 | "Let get sexy" |
| DEF | "Ok" |
| DEF | "I love you" |

Minor #1 asks if the defendant can travel to North Carolina where she was to make out with DEF face to face.

| | |
|---|---|
| DEF | "What do you call your private" |
| MIN #1 | "Period" |
| DEF | "Ok have you had one of those yet" |
| MIN #1 | "Not yet why" |
| DEF | "Just wondering" |
| MIN #1 | "Can you I will strip just for you" |
| MIN #1 | (Two heart face emojis) |
| DEF | "Ok" |
| DEF | "Can I see what you look like without a shirt on" |
| MIN #1 | "When you come" |
| DEF | "Can I see a little now bae" |
| MIN #1 | (Insertion of a "Photo" icon, indicating a photo was sent by MIN #1) |
| DEF | "Cute can I see your chest" |
| DEF | "Is that ok" |
| MIN #1 | (Insertion of a "Photo" icon, indicating a photo was sent by MIN #1) |
| MIN #1 | "There" |
| DEF | "That's your belly not your chest" |
| MIN #1 | (Silly face emoji) |
| MIN #1 | "Sorry" (plain face emoji) |
| DEF | "It's ok sweetheart" |
| MIN #1 | (Insertion of a "Photo" icon, indicating a photo was sent by MIN #1) |
| MIN #1 | "That's my chest" |
| DEF | "I love it bae" |
| MIN #1 | "When you gonna be hear" |
| DEF | "Idk" |
| MIN #1 | "Oh" |
| DEF | "Do you ever play with your private" |
| MIN #1 | "Sometimes" |
| DEF | "Have you ever put anything inside" |
| MIN #1 | "No not yet" |
| DEF | "It's ok" |
| DEF | "I still love you" |

| MIN #1 | "You are really sexy" |
|---|---|
| DEF | "Same wish I could see more of your cute private" |
| MIN #1 | "Are you in school" |
| DEF | "Nope what grade are you in" |
| MIN #1 | "4th you still love me right" |
| DEF | "Of course" |
| MIN #1 | "I am so excited to see you bae" |
| DEF | "Same" |
| MIN #1 | "Wanna video chat" |
| DEF | "Can I see another picture of your sexy private" |
| MIN #1 | "Ok" |

The defendant and Minor #1 discuss a song that Minor #1 has recorded and together they decide to video chat to see each other. Minor #1 asks for instruction on how to kiss, stating she has never kissed anyone before. The conversation about kissing leads to further discussion about sex.

| MIN #1 | "Got any sexy questions" |
|---|---|
| DEF | "Would we ever have" (surprise face emoji) |
| MIN #1 | "Have what" |
| DEF | "Sex" (surprise face emoji) |
| MIN #1 | "Yes" |
| DEF | "Hope it fits" |
| MIN #1 | "What do you mean" |
| DEF | "Would my private fit" |
| MIN #1 | "Yeah" |
| MIN #1 | "Any more" |
| DEF | "I really wana see yours more" |
| MIN #1 | "I can ask you question" |
| DEF | "Ok" |
| MIN #1 | "How sexy can you get explain" |
| MIN #1 | "Bae" |
| DEF | "Explain what" |
| MIN #1 | "How sexy can you get" |
| DEF | "You first" |
| MIN #1 | "Like take of all clothing and kiss all over" |
| DEF | "Yea" |
| MIN #1 | "What do you look like having sex can you show me" |

| DEF | "Idk" |
|---|---|
| MIN #1 | "Can you show me an image" |
| DEF | "Ok" |
| MIN #1 | (Insertion of a "Photo" icon, indicating a photo was sent by MIN #1) |
| DEF | (Insertion of a "Photo" icon, indicating a photo was sent by DEF) |
| DEF | "Like that" |
| MIN #1 | "I don't get it" |
| DEF | "That's how you have sex" |
| MIN #1 | "Oh" |
| DEF | "Yea bad" |
| DEF | "Bae" |
| MIN #1 | (Insertion of a "Photo" icon, indicating a photo was sent by MIN #1) |
| MIN #1 | "That's me" |
| DEF | "Cute wish you could pull down more" |

The defendant reaches out to Minor #1 on November 29, 2019, asking "You there" and on December 3, 2019, asking "are you mad at me"? Minor #1 did not respond. On January 3, 2020, Minor #1's Instagram account was taken over by an undercover law enforcement agent (UCA) after the communications were reported to law enforcement. After the account was taken over, the defendant asks "her" to "go live" with him, which the UCA declines. The defendant makes multiple requests for pictures of Minor #1's tank top and her undies. The defendant confirmed he still had the pictures of Minor #1's "privates" she sent him, but he stated he wanted new ones.

The contents of Minor #1's cell phone were reviewed by law enforcement. One child pornography image was recovered from Minor #1's cell phone. The image was a "selfie" which appeared to have been taken by Minor #1 while she was in a seated position with the phone positioned near her neck and the camera facing downward. The photo showed her bare belly area and pubic area. The Minor #1's pants and underwear had been pulled down toward Minor #1's knees. Her legs were closed and the nude

pubic area was visible.  No pubic hair was present.  Based on metadata, the image was taken on November 26, 2019.  Based on a follow-up interview with Minor #1, she stated that it is possible that this is one of the images she sent of herself to the defendant.

### ***The Defendant's Instagram Accounts***

Federal search warrants were sought for two Instagram accounts utilized by the defendant, including the "cuteboy4110" account.  A review of the Instagram search warrant return material included chat messages and photos to and from the defendant to more than 100 other Instagram users, primarily younger females under the age of 12. In his communications, the defendant consistently stated his name was "David" and that he was 27 or 24 years old. The defendant was 29 years old at the time of the conversations. He asked the females if they wanted to be his secret friend, secret girlfriend, or secret "BFF", meaning best friend forever. He asked the females what they were wearing and asked to see a picture of it. Once comfortable sharing a picture of themselves with clothes on, the defendant asked if they were wearing underwear underneath and what kind. He then requested to see pictures of the underwear. He progressed to ask for pictures of the girls' genitals and bare chests. He requested to have video chat sessions with them, which did occur as recorded by the Instagram log activity. The content of the video chat was not recorded or retained by Instagram. The defendant conversed in back-and-forth text conversations, engaging in sexually explicit dialogue. He encouraged the minor females to engage in sex acts by playing with themselves and by inserting objects such as a pencil or a marker inside their vaginas. The defendant requested to see photos of the sex acts or to see through live video. He

told the minor females they were pretty or cute and he told them "I love you" repeatedly. The defendant also sent pictures of himself to the minor females: fully dressed, in his underwear, and fully nude, including pictures of his erect penis.  In several pictures sent by the defendant using the "cuteboy4110" Instagram account, his face is fully visible and identifiable.

### ***Minor #2***

The search warrant return material revealed the existence of the defendant's online communications with Minor #2.  The communications took place between November 27, 2019, and January 13, 2020.  Minor #2 was able to be identified as a nine-year-old girl who lived in Canada.  Minor #2 was interviewed and disclosed her communications with the individual using the "cuteboy4110" Instagram account, including that she had sent him sexually graphic material and he had sent her sexually graphic material.  Minor #2's cell phone was analyzed; while there was indicia that she had communicated with "cuteboy4110" via Instagram, the communications did not appear to still be present on her phone.  However, screen shots of a penis with the words "from cuteboy" with the defendant's profile picture at the top of the image were present.  It appears the screen shots were created on December 27, 2019, which is consistent with the date he sent Minor #2 pictures via "Direct Story" as per the Instagram search warrant return material.

During the course of the online communications with Minor #2, the defendant introduces himself as "David" in the beginning stages of the communications.  Minor #2's Instagram profile states her name with the number "13" after her name.  In her

profile pictures on Instagram as captured in screen shots from her phone, she appears to be younger than 13 years old.  The defendant asks Minor #2 how old she is and she doesn't reply.  On the first day of communications, he asks to see her in her pajamas or undies.  He also asks to see her "private" on the first day of communications.  Minor #2 indicates that she is going to remove her age from her profile and states a friend of hers is a "little younger" and HARBIN responds "Like 8?" and she replies "Ya".  She also refers to "playing with each other" when she is "of age for that".  He states that he loves that she doesn't have "hair or boobs yet".  He acknowledges she goes to school.  He knows that she doesn't have her period yet.  Multiple pictures of her face and upper body are shared, clearly depicting she is a prepubescent minor. He discusses with her how to digitally penetrate herself, masturbate herself, and insert a pencil in her vagina.

According to the records, video calls take place immediately after they discuss showing their privates (for example on November 22, 2019,) and after they discuss his desire to watch her put a pencil in her "cucie" on November 23, 2019.  Also on November 23, 2019, the defendant states in a communication discussing when they will train their children to have sex, "Ok, what about 8 or 9 like you."  They appear to watch a pornographic video at the same time based on the context of the communications. When she is naked, he asks "Can I see your sexy coochie".  The defendant sends Minor #2 pictures of his penis.  He asks for a picture of Minor #2 on December 18, 2019, and she sends him a close-up of her nude pubic area. The following is a sample conversation on December 26, 2019, recovered from the "cuteboy4110" Instagram

search results, which includes descriptions of photos exchanged during the

communication:

| | |
|---|---|
| DEF | "What are you wearing" |
| MIN #2 | "Nothing" |
| DEF | "Can I see" |
| DEF | "Me to wanna see" |
| MIN #2 | "Sure" |
| MIN #2 | Photo ID 2207524854856730334. The image depicts Minor #2 lying on her back on a bed. Her face, torso, and waist are visible. She is not wearing any clothes on her upper body, showing her bare chest, and is wearing underwear. |
| DEF | "Sexy" |
| DEF | "Can I see your sexy undies to" |
| MIN #2 | "Sure" |
| MIN #2 | Photo ID 2207525514151177696. The image depicts Minor #2 lying on her side showing a bare torso and wearing underwear. |
| DEF | Photo ID 2207525971204425589. The image depicts the defendant, baring his body from the neck down to the knees. The male's body is hairy and fully nude with an erect penis. |
| DEF | "Sexy you like baby" |
| MIN #2 | "Ok [smiley face emoji]" |
| DEF | "Wanna see more?" |
| MIN #2 | "Ya" |
| DEF | "Can I see your vj to" |
| MIN #2 | "Ya" |
| MIN #2 | Photo ID 2207526054192918253. The image depicts Minor #2 exposing her chest, waist, and legs down to the thigh. A pair of underwear had been removed from the pubic area and is visible hanging off of one of the minor's thighs. Minor #2's nude pubic area is exposed; the minor child's nude labia majora are visible. No visible pubic hair growth is evident in the photo. |
| DEF | Photo ID 2207526659447627578. The photo is a close- up of an adult male's groin showing an erect penis. |
| DEF | "Can I see more baby" |
| MIN #2 | "Love it [smiley face emoji]" |

| MIN #2 | "Sure but after this I'm watching YouTube" |
| DEF | "Ok" |
| DEF | "What are you going to watch" |
| MIN #2 | Photo ID 2207526685964197728. The photo is a close-up of the nude pubic area of Minor #2. The minor female's nude labia majora are visible. No visible pubic hair growth is evident in the photo. |
| DEF | "What are you going to watch babe" |
| DEF | "Wanna video chat today" |
| MIN #2 | "Maybe later" |

### *Minor #3*

The Instagram search warrant return material also revealed the existence of the defendant's online communications with Minor #3. The communications took place between October 25, 2019, and January 8, 2020. Minor #3 was able to be identified as a nine-year-old girl who lived in England. Minor #3 disclosed that she had sent "cuteboy4110" photos of her body and that he had sent her photos of his private parts. Minor #3's cell phone was analyzed; it confirmed that the defendant sent her messages utilizing iMessage from his email account. In addition to the emails, a video clip which includes the defendant's face and shows the defendant masturbating was recovered from Minor #3's cell phone.

A review of the Instagram search warrant return material reflects that the defendant introduces himself as David on October 25, 2019. On the next day Minor #3 shares with the defendant that she is nine years old and in the fifth grade. He asks what she is wearing and she responds "Clothes". He tells her that he has "2 other bffs that are 7 and 9". He conveys to her that "Your like the nicest girl on here besides them" and "Plus I think I can trust you some". He then asks her "Can I see what your wearing

today?" and "Can I see what you have on Without showing your face?".  Minor #3

appears to have sent a picture of herself at that time as the defendant responds "Can I

see a better pick of your leggings they are so cute".  The defendant then discuss the

numerous ways they can communicate online, for example on ipad or iPhone.  The

defendant asks "Do you have FaceTime on or It" and Minor #3 responds "Yeah why?"

The defendant says "We could text there sometime if you want".  He asks her to add

him to FaceTime and shares his email address.  Between October 29 and November 5,

2019, the following communication ensued on Instagram:

| MIN #3 | Can you teach me how to play with my vagina? |
|--------|-----------------------------------------------|
| DEF | Yes |
| DEF | Do you still want me to |
| MIN #3 | Yes I do |
| MIN #3 | Can you still teach me how to play with my cute vagina? |
| MIN #3 | ??? |
| DEF | Hey babe |
| MIN #3 | Hi |
| DEF | Are you still my babe |
| MIN #3 | Yeah |
| MIN #3 | So can you teach me please xxx |
| DEF | Yea here or on messages? |
| MIN #3 | ?? |
| MIN #3 | I sent you a video |
| MIN #3 | I texted you on messages[7] |
| DEF | Hey babe |

[7] As noted herein, the defendant sent Minor #3 messages utilizing iMessage from his email account which were recovered from Minor #3's cell phone.  However, only the iMessages exchanged between Minor #3 and the defendant between November 27, 2019, and December 20, 2019, were recovered.   Minor #3 stated she deleted some parts of the conversations and photos of her and the individual utilizing the "cuteboy4110" Instagram account.

| MIN #3 | Hi |
|--------|-----|
| DEF | I love you |
| MIN #3 | Same |
| DEF | Love you more than anything |
| MIN #3 | I love you to space and back and you have the most cutest penis I've ever seen |
| DEF | Same your have the most sexiest and cutest vagina and nipples |

On December 4, 2019, the defendant and Minor #3 engage in a lengthy online communication including the topics of sex and pornography. Later in the conversation, the defendant asks "Ok is your vagina wet". Minor #3 responds "No". The defendant responds "Ok". He then states "I love you princess" and "Can you show now?" On December 6, 2019, the defendant inquires as to whether Minor #3 is wearing any undies and she says "Nope". The defendant states "Can I see". Minor #3 says that she can't because her sister is next to her. The following conversation ensues:

| MIN #3 | Ok I'm gonna go watch that porn video byee xxxxxxxxxxxxx |
|--------|-----|
| DEF | Ok are you going to play to |
| MIN #3 | Yes |
| DEF | Can you make me a video? |
| MIN #3 | Ok |
| DEF | I love you |
| MIN #3 | Same |
| DEF | Did you make it? |
| MIN #3 | No I'm making it now |
| MIN #3 | Can y |
| DEF | Ok love |

Minor #3 then asks the defendant to make a video of him rubbing his penis against the camera and the defendant asks "Like I did before?"  The defendant asks her if she will do that too and she responds affirmatively but tells him that she needs to do it dressed.  The defendant asks to see her "undies" before she does that and Minor #3 states that she does not have any on.  The defendant states "Can you show".  Minor #3 responds "K".  Minor #3 asks whether the defendant would rather see her "humping" the camera or with no undies on.  He asks "Can I see you humping with no undies on". After she tells him no because her sister is there and she states "Can I show you no undies anouther day", the defendant asks "Just a little bit?  I miss seeing it".  The defendant then sends Minor #3 a video of himself masturbating.  Shortly thereafter, the defendant states "Can you show your cute vagina little more baby".  She responds "No sorry".  The defendant states "Please can your try" and sends her a heart emoji.  She does not respond.

On December 17, 2019, the defendant tells Minor #3 "Ok when you get in bed tonight your should see if you can get a pencil or marker inside you" and "Can you do that for me?"  Minor #3 responds "No sorry".  The defendant asks "Why babe".  Minor #3 answers "Because I go bed early and my mum watches my every move".

### *Identification of the Defendant and Search Warrant Execution*

On January 9, 2020, pursuant to federal legal process for the "cuteboy4110" Instagram account, it was determined that the account was registered on September 17, 2019, using IP address 184.166.4.77.  Federal legal process sent to Charter

Communications for IP address 184.166.4.77 determined that the IP address 184.166.4.77 was registered to Alan Harbin, 587 Village Way, Grand Junction, Colorado 81507 at the relevant date and time.  During the course of the investigation, it was determined that the defendant also lived at that address.  Further, the pictures obtained from the Colorado DMV for Benjamin David Harbin during the course of the investigation matched the pictures the defendant sent of his face to Minor #2 and other minor females he communicated with on Instagram.  Subscriber information received from Charter Communications for the Internet service at defendant's home indicated that at the dates and times the defendant was communicating with the aforementioned minors, the IP address from his Instagram accounts resolved to his residence in the District of Colorado.

On March 27, 2020, a federal premises search warrant was executed at 587 Village Way, Grand Junction, Colorado 81507.  A desktop computer belonging to the defendant's father was recovered during the search warrant execution.  The forensic examination of the computer did not reveal relevant evidence.  A Sony PlayStation 4 gaming console was recovered from the defendant's bedroom.  The PS4 hard drive was encrypted and therefore inaccessible.  No further digital storage devices were recovered at the residence, with the exception of a wireless router.

### ***Evidence of Devices Utilized by the Defendant***

During the course of the investigation, there was ample evidence recovered that the defendant had access to at least four different digital storage devices which would have provided him with the ability to communicate online via the Instagram accounts.

First, a receipt for a prepaid AT&T Radiant cell phone, purchased on January 17, 2020, from Walmart was recovered during the search warrant execution.  A prepaid AT&T card used for paying for calling time and/or data was recovered from the defendant's bedroom.  It was located in the box spring mattress; the cloth on the box spring had been cut and the card was tucked inside the box spring mattress.  The FBI case agent went to Walmart to determine whether there was and video surveillance of the phone and calling card being purchased. The video footage still existed and consisted of a white male matching the appearance of the defendant purchasing two items:  one item was a small boxed package and the other item was the size of an index card.  Cash was provided by the customer and change was handed back in return.  The defendant also admitted to his Mesa County Probation Officer when she discussed the investigation with him that he had gotten rid of his phone.

Second, a box for an Apple iPad Pro was recovered from the defendant's bedroom.  Two Apple lightening charging cords, along with an Apple card which allows one to make purchases from Apple, were also located in the defendant's bedroom.

Third, a receipt for the layaway purchase of an Apple iPod Touch 5th Generation from "First National Pawn, LLC", dated March 7, 2019, was also recovered from the defendant's vehicle.  The FBI case agent interviewed the manager at "First National Pawn, LLC".  The manager retrieved the customer account associated with the layaway receipt and confirmed that "Benjamin David Harbin, 587 Village Way, Grand Junction, CO 81507" completed the purchase of an Apple iPod Touch 5th Generation on March 11, 2019.

Fourth, review of the metadata associated with one of the masturbation videos (which also shows the defendant's face) sent by the defendant to one of the minor victims reflects that the video was created with an iPad Mini 2.

Defendant admits that Minor #1, Minor #2, and Minor #3 were each less than 12 years old at the time of the offense conduct; the offense involved the use of a computer to persuade, induce, entice, or coerce Minor #1, Minor #2, and Minor #3 to engage in prohibited sexual conduct; and the defendant engaged in a pattern of activity involving prohibited sexual conduct with Minor #1, Minor #2, and Minor #3.

## VI.  ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The guideline calculation below is the good-faith estimate of the parties, but it is only an estimate.  The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range.  To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the

estimate below.

**Offense Level for Count One:**  The base guideline is § 2G1.3.[8]

U.S.S.G. § 2G1.3(d) specifies, "If the offense involved more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the persuasion, enticement, coercion, travel, or transportation to engage in a commercial sex act or prohibited sexual conduct of each victim had been contained in a separate count of conviction."  Therefore, the parties calculated the offense levels for Minor #1, Minor #2, and Minor #3 below prior to applying the grouping rules in § 3D1.4.

**Offense Level for Count One, Minor #1**:

The base offense level for this offense is **28**.  § 2G1.3(a)(3).

Because the offense involved the use of a computer to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct with the minor, there is an increase of **+2** levels.  § 2G1.3(b)(3)(A).

Because § 2G1.3(a)(3) applies and the offense involved a minor who had not attained the age of 12 years, there is an increase of **+8** levels.  § 2G1.3(b)(5).

The offense level for Count One for Minor #1 is **38.**

**Offense Level for Count One, Minor #2**:

The base offense level for this offense is **28**.  § 2G1.3(a)(3).

Because the offense involved the use of a computer to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct with the minor, there is an increase of **+2** levels.  § 2G1.3(b)(3)(A).

Because § 2G1.3(a)(3) applies and the offense involved a minor who had not

---

[8] The production of child pornography sentencing guideline applies if the production guideline calculation is greater than the guideline calculation under § 2G1.3. § 2G1.3(c)(1).  Here, the production guideline calculation under § 2G2.1 is equal to the guideline calculation under § 2G1.3.  Therefore, the sentencing guideline under § 2G1.3 applies.

attained the age of 12 years, there is an increase of **+8** levels.  § 2G1.3(b)(5).

The offense level for Count One for Minor #2 is **38.**

### Offense Level for Count One, Minor #3:

The base offense level for this offense is **28**.  § 2G1.3(a)(3).

Because the offense involved the use of a computer to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct with the minor, there is an increase of **+2** levels.  § 2G1.3(b)(3)(A).

Because § 2G1.3(a)(3) applies and the offense involved a minor who had not attained the age of 12 years, there is an increase of **+8** levels.  § 2G1.3(b)(5).

The offense level for Count One for Minor #3 is **38.**

### Calculation for Multiple Victims under § 2G1.3(d):

One Unit is counted for Minor #1.  One Unit is counted for Minor #2, as that Group is equally serious.  One Unit is counted for Minor #3, as that Group is equally serious.  The total number of Units is three.  Three Units results in an increase of **+3** levels to the Group with the highest offense level.  § 3D1.4.

Therefore, the combined offense level for this offense involving Minor #1, Minor #2, and Minor #3, as calculated under § 3D1.4, is **41**.

No role-in-offense, obstruction and/or multiple count adjustments apply.

Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility.  § 3E1.1(a).  Defendant should also receive a decrease in the offense level by **–1** for timely notifying the government.  § 3E1.1(b).  At sentencing, the government will make the appropriate motion for the one-point reduction.

Because the defendant is a repeat and dangerous sex offender against minors, there is an increase of **+5** levels.  § 4B1.5.  The defendant reserves the right to argue that this enhancement doesn't apply.

The total adjusted offense level for Count One of the Information is **43.**

### Criminal History Category

The parties acknowledge and agree that the estimation regarding Defendant's criminal history is tentative.  Defendant acknowledges that the criminal history

will be further investigated by the United States Probation Department and ultimately determined by the Court. Defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment. Based upon the facts known at this time regarding Defendant's criminal history, the parties believe that Defendant falls within Criminal History Category ("CHC") **III**. § 4A1.1.

The career offender adjustment tentatively does not apply. § 4B1.1.

**Guideline Ranges**

The guideline range resulting from the estimated offense level of 43 and the estimated criminal history category of III is **life imprisonment**. The imprisonment range is life imprisonment from CHC I to CHC VI.

Pursuant to § 5E1.2, assuming the estimated offense level of 43, the fine range for this offense would be $50,000 to $500,000, plus applicable interest and penalties.

Pursuant to 18 U.S.C. § 3583(k) and § 5D1.2(b)(2), if the Court imposes the term of supervised release, that term shall be at least 5 years but not more than life.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

//

//

//

//

## VII. __ENTIRE AGREEMENT__

This document states the parties' entire agreement.  There are no other promises, agreements or "side agreements," terms, conditions, understandings or assurances, express or implied.  In entering this agreement, neither the government nor the defendant has relied, or are relying, on any other terms, promises, conditions or assurances.

Date: 11/4/22

BENJAMIN DAVID HARBIN
Defendant

Date: 11/8/22

Douglas I. Richards
Attorney for Defendant

Date: 12/7/22

Alecia L. Riewerts
Assistant U.S. Attorney